John A. Tolman Company *v.* McClure *et al.*

Filed May 8, 1894.

———————◆———————

1,165.

## John A. Tolman Company *v.* McClure et al.

CONTRACT.—*Employment and Guaranty.—Construing Together.—Liability of Guarantors.*—A contract of employment and a contract of guaranty subsequently executed to secure the performance of the former contract by the employe, will, in an action by the employer against the guarantors declaring upon both contracts, be construed together, and the guarantors will be liable for the employe's acts only within the scope of the contract of service.

SAME.—*Liability of Guarantors for Money Advanced to Employe.—Credit for Commissions.*—Where a contract of guaranty stipulates that the guarantors shall be liable for all moneys which an employer may from time to time advance to an employe in excess of the amount due the latter for commissions, it must be shown, to warrant a judgment against the guarantors on account of moneys advanced, that the advancement was made in the course of the business covered by the contract of employment, and that proper credits have been given the employe for commissions earned.

EVIDENCE.—*Letter.—Explanation by Writer.*—Where a letter written by a-party to an action is introduced in evidence, the writer may properly be permitted to explain how he came to write it.

From the Daviess Circuit Court.

*W. H. De Wolf, C. G. Gardner* and *W. R. Gardner*, for appellant.

*G. G. Reily* and *J. W. Emison*, for appellees.

REINHARD, J.—Action by the appellant against the appellees on a contract of guaranty. Answer in general denial. Trial by jury. Verdict and judgment for the appellees, the defendants below. The only error assigned is the overruling of appellant's motion for a new trial.

It is averred in the amended complaint, that the appellant corporation, on the 16th day of October, 1890, entered into a certain agreement, in writing, with one Samuel L. McClure, in substance and to the effect following, viz.: "Chicago, October 16, '90. This memorandum certifies: engaged Samuel McClure as salesman to solicit orders for goods for us, John A. Tolman Co., he expending his entire time and energy in faithfully and intelligently rendering such service for one year from date, or at our option as to time, if less time. We are to pay him forty (40) per cent. of the profits he makes on the route selling goods for us, he to pay his own expenses and furnish his own sample cases, we to be the final judge of all credit given customers, and no order is to be counted as a sale, except order is acceptable to us; on the further condition that he stays the full year's time out, and also stands fifty (50) per cent. of any losses that may be incurred from bad debts, or any expense for collecting difficult accounts on the territory for the time when the sales for the year are collected for, we are then to pay an additional ten (10) per cent. of the profits, and until that time this ten (10) per cent of the profits is to be held as a guarantee fund for the purposes specified. At the end of the year, when collections for the sales are made, if no losses from bad debts have occurred, we are

to pay over the ten per cent., but, if any losses have occurred, we are to deduct half the amount of the same from this ten (10) per cent. guarantee fund, pay over the balance. If half the amount of the losses exceed the guarantee fund, we to stand the balance.

"(Sig.)                    SAM'L L. MCCLURE."

It is further averred that on the 23d day of October, 1890, the appellees, for the purpose of guaranteeing the appellant against loss or damage by reason of having so employed said McClure as salesman and solicitor as aforesaid, executed to the appellant, in writing, their guaranty, whereby they jointly and severally, in consideration of $1 to them paid by the appellant, agreed and guaranteed the payment of any and all moneys which the said Samuel L. McClure might collect for account of the appellant, and for all moneys which the appellant might from time to time advance to the said Samuel L. McClure, and any and all indebtedness which thereafter became due to the appellant from said Samuel L. McClure; and by said guaranty and agreement said appellees further agreed to accept a verified statement of the account as kept in the regular books of the appellant as correct and final between the appellant and said McClure, and without requiring any demand or notice of default. And they further agreed that any extension might be granted said McClure, or other security be taken or released at any time without notice, or affecting their liability, said liability to be limited to $1,000, together with interest at eight per cent. per annum, and all costs, attorney's fees and expenses arising from enforcing collection. A copy of said guaranty is filed with this complaint and made part hereof, marked exhibit "A." Appellant further avers that the said Samuel L. McClure entered the service of appellant as a salesman and solicitor, and remained in the service of appellant from the said 17th

day of October, 1890, until the first day of August, 1891, when he left said service; that during the time he was in appellant's employment aforesaid appellant advanced to said McClure from time to time various sums of money, paid express charges for him, redeemed a watch and sold him a cash book and samples, all with interest thereon, amounting to $975.23, a bill of particulars thereof being filed herewith and made a part hereof and marked exhibit "B." And the said Samuel L. McClure became indebted to the appellant in said sum of $975.23 during the time he was so employed by the appellant, and that during said time the commissions earned by said McClure, and all the credits to which he is entitled, including such commissions, cash book and samples returned, amount to the sum of $278.56, leaving due and owing the appellant, from said McClure, the sum of $696.76, with interest thereon, and for which sum, with interest, said appellees are liable to the appellant on their said guaranty. Appellant avers that said sum is due and remains wholly unpaid, and that notice thereof was duly given the appellees, and payment demanded, but that appellees refused to pay the same, or any part thereof, and that a reasonable attorney's fee is $100. Wherefore, etc.

Exhibit "A" is as follows:

"In consideration of the sum of one dollar and other valuable considerations received from John A. Tolman Co., the receipt of which is hereby acknowledged, I, or either of us, hereby guarantee the payment to John A. Tolman Co., of any and all moneys collected by Samuel L. McClure for account of John A. Tolman Co., and for all moneys which they may from time to time advance to said Samuel L. McClure, and any and all indebtedness now due or which may hereafter become due John A. Tolman Co., in excess of the amount due said Samuel

L. McClure, as per agreement between said John A. Tolman Co. and said Samuel L. McClure, and to accept a verified statement of the account as kept in the regular books of said John A. Tolman Co. as correct and final between the said company and the said Samuel L. Mc-Clure, and without requiring any demand or notice of default, and I agree that any extension may be granted him or other security taken or released at any time, without notice or affecting my liability. My liability, however, is limited to $1,000, together with interest at eight per cent. per annum until paid, and all costs, attorney's fees and expenses that shall arise from enforcing collection, and for such amounts this is extended as a continuing guaranty.

"Witness my seal this 23d day of October, 1890, in the county of Knox, and State of Indiana.

"Sig.                                 "N. P. McClure.

                                          "Job Freeman.

                                          "P. Clark.

                                          "Wm. L. Ewing."

The instrument was duly acknowledged before a notary public of the county of Knox.

The bill of particulars referred to in the complaint is copied into the transcript as exhibit "B," and shows the various items of charges and credits in the account of Samuel L. McClure, as kept in the books of the appellant, and shows a balance of $696.67 due the appellant.

The reasons assigned in the motion for a new trial are—

1. The verdict is not sustained by sufficient evidence.

2. The verdict is contrary to law.

3. Error in the giving of certain instructions.

4. Error in the admission of certain evidence over appellant's objections and exceptions.

Is the verdict sustained by the evidence? The appellant introduced in evidence the written guaranty, and

John A. Tolman Company *v.* McClure *et al.*

also the memorandum of contract between it and Samuel L. McClure, set forth in the complaint. It proved by the deposition of S. A. Tolman, vice-president of the appellant company, that he employed McClure as a traveling salesman for the appellant, McClure continuing in appellant's service until June, 1891, when he was discharged, and that McClure was then indebted to the appellant in the sum of $696.67.

A statement was here shown the witness, and he was asked to state whether or not it was a correct account of the moneys received by McClure, and the credits to which he was entitled, to which the witness responded that it was, and correctly showed the balance due from McClure to appellant, except the interest that should be added to it. The witness further deposed that a demand had been made by appellant on Samuel L. McClure for the payment of this sum, but nothing had been received from him on account of the same, except as shown by the statement.

The statement referred to by the witness was made a part of his deposition, and is the same as exhibit "C," the bill of particulars, filed with the complaint. This account contains a number of charges of "cash," without any accompanying explanation as to whether it was money loaned or furnished McClure in connection with the business in which he was employed, or for what it was furnished him. It also contains these items:

"Redeeming watch ..............$11 25
"Int. .......................... 5 58
"40 per cent. ded. Burton........ 2 60
"Cash book and samples ......... 31 85
"Expressage................... 60
"40 per cent. ded. July .......... 1 70
"Int. .......................... 4 65"

All these items are accompanied by their proper dates, and amount, in the aggregate, including the cash items, to $975.23.

The credits, also properly dated, are as follows:

| | | |
|---|---|---:|
| Com. Nov. | ................... | $34 40 |
| " | Feb ..................... | 74 |
| " | Dec. .................... | 38 40 |
| Katora Certs. | ................... | 50 |
| Com. Jan. | .................... | 27 50 |
| " | Feb...................... | 57 20 |
| " | Mch. ................... | 25 20 |
| " | Apr. .................... | 16 74 |
| " | Katora................... | 2 50 |
| " | May .................... | 28 83 |
| " | June ................... | 15 00 |
| Cash book and samples | ......... | 31 85 |

Total credits.............$278 56

Bal. Dr., $696.67.

The witness further testified that the appellees were each separately notified by letter as to their liability upon the guaranty in suit, and that answers to these letters were received from appellees Freeman and Ewing. Copies of these letters are made part of the deposition of the witness, and show that Ewing stated that he and Noah P. McClure were satisfied as to their liability and willing to settle forthwith their pro rata share if appellant would give them a release, as they desired to be put to no further expense and saw nothing in the way of appellant's doing so, as the other two bondsmen were perfectly responsible.

Freeman answered appellant's letter, but made no particular admissions. The other two appellees made no reply.

Ambrose S. Delaware also testified by deposition, and stated that he was the secretary of the John A. Tolman Company, and resided at Chicago. He stated that he had charge of the books of account of the appellant company, and that these were all kept under his direction and supervision. He identified Exhibit "C," the bill of particulars filed with the complaint, and said it is "a complete account, in fact it is the face of our ledger, and shows all the debits and credits in our account with S. L. McClure from the time he commenced with us as salesman in October, 1890, until he discontinued to represent us, in June, 1891; the balance due us from him is $696.67, with interest from August 21, 1891, to be added. All of the debit items that appear upon this account prior to July 20, 1891, with one exception, are cash items, and are for moneys either paid to him at the store, or forwarded to him by mail, either upon telegraphic or written orders. The item under date of November 5 was money paid out at his request for redeeming a watch which he had pawned, as I recollect it. The items of charges of July 20 consist of interest and some deductions on losses from sales which had previously been credited to him, and two deductions which were charged July 20, of $2.60, and of August 3, of $1.70, were deductions from previous credits given to him for his share of profits, which were not realized. The credit items upon this statement are those that are shown by our ledger, and consist of his share of profits upon sales made by him, with the exception of the last item of credit of cost, book and samples returned, $31.85. These computations of the proportion of profits were made by Mr. Waterman Hunt, one of the clerks in the employment of the plaintiff, whose business it is to ascertain the proportion of profits upon sales upon all such cases."

Waterman Hunt, in his deposition, stated that he was

a clerk for the appellant and knew McClure in connection with his employment in appellant's service; that it was the duty of the witness to figure the gross profits belonging to each sale made by each and every salesman in appellant's employ; that he made the figures upon the sales made by S. L. McClure, showing the profits to which he was entitled under his contract with appellant, during the months from November, 1890, to June, 1891, inclusive; that the statement, marked Exhibit "C," showed correctly the profits or proportion to which McClure was entitled during that period, and all he was entitled to receive.

A substantially correct summary of the remainder of the evidence, contained in the brief of appellant's counsel, is as follows:

James W. Ogden and Arnold J. Padgett testified that they are practicing attorneys, and that a reasonable attorney's fee is from seventy-five to one hundred dollars.

W. H. DeWolf testified that he is the attorney for the plaintiff, and is acquainted with all of the defendants, and also knows Samuel L. McClure. In September, 1892, he met said McClure, and had a conversation with him regarding the claim in suit. In that conversation McClure made no question as to its being correct. He said he had no money and could not pay, and said we must look to the bondsmen. Witness demanded payment. He also had a conversation with the defendant, Clarke, and he, Clarke, said he supposed they were stuck for it, and later he had another conversation with Clarke when he said they had consulted with an attorney, and he had advised them not to pay. He also saw Mr. Freeman, and demanded payment of him. He also saw Mr. Ewing, and demanded payment. He, Ewing, said he was ready to pay his share at any time, and he had no defense to make to it. He also testified

John A. Tolman Company *v.* McClure *et al.*

that Samuel L. McClure has no property, unless it may be some household furniture. He has a family and resides in Vincennes, Indiana.

Frank Clarke testified that he received a letter from the plaintiff, a copy of which was read in evidence. After that the defendants, or some of them, had a meeting and conferred about the matter. Mr. DeWolf spoke to the witness about it, the first time by telephone, and again upon the street when they met. Don't remember the amount that was claimed, but it was over six hundred dollars.

This occurred before suit was brought.

Noah McClure testified that he received a letter from plaintiff, of which Exhibit E in the deposition of S. A. Tolman is a copy. He saw no itemized statement, and asked for none.

Job Freeman testified that he saw a statement of the account at Mr. Ewing's.

This was the evidence for the plaintiff.

Thereupon Job Freeman was called as a witness for the defendants, and testified that on July 21, 1891, he wrote plaintiff that he believed he and his co-defendants were liable only for such money as Samuel L. McClure might collect for plaintiff, and fail to pay over. This testimony was objected to by plaintiff upon the ground that it was irrelevent and immaterial, and the defendants could not be permitted to thus explain, vary, or deny their written contract. The objection was overruled, and the plaintiff excepted. The witness further testified that he did not particularly read the bond, and did not understand that he was liable for money which plaintiff might advance McClure for his expenses.

Frank Clarke testified that he never wrote plaintiff for a verified statement. He also testified the same as Freeman regarding his understanding as to his liability, and

did not particularly read the bond.   This testimony was also objected to by the plaintiff, but the court  overruled the objection and admitted the testimony.   He also testified that Samuel L. McClure lives in Vincennes, and has no property.

This, in substance, was all the evidence given.   We think the contract of guaranty must be construed in connection with the contract of employment between the appellant and McClure.   That the parties contracted with reference to the employment is apparent, we think, from the instrument of guaranty itself, which refers to the contract of employment, and also to certain  profits to be allowed McClure, which can be explained only by reference to the guaranty and  the circumstances  under which it was entered into.

While it is true that the two instruments were not executed concurrently, the guaranty being dated a few days subsequent to the contract between appellant and McClure, it is manifest that the  guaranty was  given to secure  the  appellant in  the faithful  performance of McClure's duty as a salesman, and we think these contracts should be construed together.   Indeed this is the theory of  appellant's  complaint, in which both  contracts  are declared upon, and it is sought to  hold  appellees liable for the breach of McClure's obligation.   This being so, the guarantors, or sureties, can be held liable only within the scope of McClure's contract, and not for a breach of any obligation not imposed by  such contract of employment.   *Weed Sewing Machine Co.* v. *Winchel,* 107 Ind. 260.

By the terms of the guaranty the appellees are liable:

1.  For all moneys collected by McClure for account of the appellant.

2.  For all moneys which appellant  may from time to time advance McClure.

3. For all indebtedness then due, or which might thereafter become due appellant, in excess of the amount due McClure.

This threefold obligation embodied in the stipulations of the guaranty is followed by the statement, "as per agreement between said John A. Tolman Co. and said Samuel L. McClure." It is obvious that this constitutes a limitation upon the liability of the appellees, and confines it within the scope of the appellant's contract with McClure, and that this limitation is not restricted to the third item of liability alone. The first and third items of liability, as above enumerated, are easy to determine. Under these obligations we think the guarantors undertook to be responsible for all collections made by McClure for the appellant in the course of his employment, and to secure to the appellant any balance that might be found due to it after deducting what was due McClure for commissions. There appears to be no claim for money collected for appellant and not paid over.

The second of the above undertakings is not so easy of solution, we think. By the words of the contract it is certainly true that the appellees undertook to guarantee the repayment of any and all moneys that appellant might advance to McClure, but with the construction we feel impelled to place upon it, we do not think it is sufficiently broad to embrace any and all loans, and for whatever purpose which appellant might choose to make to McClure. It certainly can, not be maintained that if McClure decided to make a pleasure tour to Europe, or to borrow money to invest in property, it was intended that the appellees were to make themselves liable for any sum advanced to McClure for a purpose so foreign to his employment, and to the evident purpose of the guaranty. What the parties contemplated was, doubtless, any and

all sums of money that might be advanced to McClure in the course of his employment. McClure was to pay his own expenses, and presumably needed money for this purpose, while the profits going to him might not always yield an amount sufficient to meet such requirements. The appellant was, therefore, in duty bound to prove that the money advanced to McClure was furnished to and received by the latter to enable him to pay his traveling expenses, and to meet such other requirements as were reasonably within the course of the business in which he was employed.

The evidence tends to show that the moneys mentioned in the depositions and in the bill of particulars were furnished McClure by the appellant, from time to time, as McClure called for or ordered the same, and that they were given to him in the appellant's place of business, or sent him by mail, while in appellant's employment.

The appellees' counsel insist, however, that this was not sufficient, and that it was incumbent upon the appellant to show specifically what each item of the money was advanced for, before a recovery could be had upon such item, so as to coerce the jury to the conclusion that such amounts were paid to him in the due course of the employment. In this contention we think the appellees are correct. The evidence fails to prove that any money was advanced to McClure to enable him to carry on the business for which he was employed, and against the appellees, the sureties, no presumption can be indulged that the sums furnished McClure were within the scope of the contract. It may be true that the facts that the moneys were paid McClure at the store, and on his orders during the time of his employment, together with the general statement that the account was correct, etc., were sufficient to authorize the jury to draw an inference that the money was furnished McClure in the course

John A. Tolman Company *v.* McClure *et al.*

of the business, but this was not an inference, the jury were compelled to draw, and having come to a contrary conclusion, and the trial court having sanctioned the verdict, we do not see how we can disturb the judgment.

If the evidence fails in establishing the cash items as the jury found, then it matters not whether the credits given McClure were right or wrong, for if the money advanced, which constitutes the only items of indebtedness for which there can be any liability, is not shown to be such as is embraced in the letter and spirit of the contract, there could be no recovery in any event. We are, however, of the further opinion that it also devolved upon the appellant to show that it had given McClure the proper credits for commissions earned, and that under the contract of guaranty such showing is a condition precedent to any recovery upon the same against the sureties or guarantors.

Some complaint is made as to instructions given by the court. We have examined these instructions, and think they correctly state the law as applicable to the case. We also think that no error was committed in allowing some of the appellees, in rebuttal, to explain their action in connection with the letter written by one of them. Ordinarily it is not proper to allow a party to testify to his understanding as to what his liability is under a contract. But here the witnesses whose testimony was objected to were testifying with reference to a letter written by one of them, and he was only permitted to explain how he came to write the letter. There is no available error.

Judgment affirmed.

Filed April 24, 1894.