(No. 24194.—▮▮▮▮▮)

The People of the State of Illinois, Appellant, *vs.* The Chicago Railways Company *et al.* Appellees.

*Opinion filed June 15, 1938.*

Thomas J. Courtney, State's Attorney, and Philip H. Treacy, (Marshall V. Kearney, and Jacob Shamberg, of counsel,) for appellant.

John R. Guilliams, Frank L. Kriete, and Arthur J. Donovan, (Charles L. Mahony, of counsel,) for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

The question in this case is whether the surface-wearing course of a strip of street pavement required to be maintained by a street railway company is taxable as tangible personal property of the company. The issue is presented here by appeal of the People from a judgment of the circuit court of Cook county in favor of the Chicago Railways Company, Chicago City Railways Company, and Calumet and South Chicago Railway Company, appellees, in a consolidated cause where it was sought to collect such a tax for the year 1933. Each of the appellees operates its street railway on streets in Chicago under enabling ordinances providing for a division of net profits between the companies and the city, and containing an option of purchase by the city or its nominee. The ordinances require the companies to maintain an eight-foot strip of pavement on single-track streets, and a sixteen-foot strip on double-track streets.

For the purpose of assessment the property of corporations is divided into two classes—*i. e.*, tangible and intangible, the tangible being assessed by local assessors and the intangible by the State Tax Commission. Local assessors have no power to assess intangibles and the State Tax Commission has nothing to do with assessing tangibles. (*Chicago Railways Co.* v. *Gill,* 366 Ill. 605.) All capital stock taxes and personal property taxes of appellees on poles, wires, rails, ties and the foundation upon which the track and the paving strip are laid were paid for the year 1933. No question as to any of such taxes is involved.

Section 15 of the Revenue act, (Ill. Rev. Stat. 1937, chap. 120, par. 15,) invoked by appellant as authority for the tax in controversy, provides: "The personal property of street railroad, plank road, gravel road, turnpike or bridge companies, shall be listed and assessed in the county, town, district, village or city where the principal place of business is located. The track, road or bridge shall be held to be personal property, and listed and assessed as such, in the town,

district, village or city where the same is located or laid."
The section contains no express provision, nor any from
which it must be implied, that the track of a street railroad
includes strips of pavement such as are here involved, or
that such strips are personal property of the company.  It
affords no assistance in determining the issue here.

Section 4 of the act relating to street railroads (Ill. Rev.
Stat. 1937, chap. 131¼, par. 4) provides: "Every grant
to any such company of a right to use any street, * * *
or public ground shall be subject to the right of the proper
authorities to control the use, improvement and repair of
such street, * * * or public ground, to the same extent
as if no such grant had been made, and to make all neces-
sary police regulations concerning the management and op-
eration of such railroad, whether such right is reserved in
the grant or not."

In *Village of Madison* v. *Alton, Granite and St. Louis
Traction Co.* 235 Ill. 346, we said: "Cities and villages hold
their streets in trust for the public use and benefit, and it
is their duty to control and improve them for such uses.
They cannot grant their exclusive use to private individuals
or corporations, nor can they make any contract or grant
that would relieve or preclude them from the performance
of their duty to control and improve the streets for the pub-
lic use.  The requirement of the ordinance in question that
the appellant should pave the street, within certain limits,
with macadam, was an exercise of the power of the village
of Madison to control and improve the street."  The nature
of such grants is illustrated in *City of Anna* v. *Northern,*
261 Ill. 538, where, in a special assessment proceeding, we
held that in lieu of a cash assessment upon tracks, fran-
chise and right of occupancy, a city may enter into an
agreement with a street railway company requiring the com-
pany to pave, maintain and repair certain specified portions
of the street in consideration of the rights and privileges
granted.  In other words, such a contract merely substitutes

the duty of maintenance of the strip for the payment of a cash consideration for the benefits received. The result is the same as if the company paid the consideration in cash and the city used the money to lay and maintain the pavement. The requirement for maintenance under such a contract is regarded as a special assessment on the company's right of way. (*City of Springfield* v. *Gillespie,* 335 Ill. 388; *City of Moline* v. *Tri-City Railway Co.* 262 id. 122; *City of Lincoln* v. *Chicago and Alton Railroad Co.* id. 11.) The railway company acquires no more title to the strip in the one instance than it does in the other. An illuminating discussion of the principle involved is found in *People* v. *State Board of Tax Comrs.* 209 N. Y. 496, 103 N. E. 776. In that case a tax was sought to be levied on the pavement required by the statute to be laid by a street railway company on that portion of the street between its tracks and two feet outside thereof. The court said in the opinion: "There is nothing in this language [of the statute] which suggests the idea that a corporation to which it applies is to become the owner of any part of a street, avenue, or public place which it keeps in repair in compliance with the mandate of the statute. It would be a strange arrangement indeed which should vest part of the ownership of a street pavement in a municipal corporation and part in a street railroad company. * * * The provision of the Railroad law requiring street surface railroad companies to pay the cost of paving between their tracks and for two feet outside thereof is an exercise of the taxing power. The tax is paid in the form of paving and other materials for street construction. Having required the corporation thus to contribute to the general public welfare the legislature could not have intended to impose a tax upon the tangible property so contributed. The materials which go into the paving are really purchased by the railroad company and turned over to the municipality for the benefit of the community at large. The railroad company derives no special or peculiar benefit from the con-

struction of the pavement; indeed, it is a burden rather than a benefit.

"The position assumed by the relator is that, while the payments for pavements may properly be considered, with other taxes imposed as a condition of doing business, in estimating the value of the intangible right to occupy the street, the pavement itself cannot be regarded as tangible property of the railroad corporation. I think this is the correct view. The price which the railroad company is willing to pay to lay down and maintain the statutory pavement is some evidence of the value of the intangible right to operate the railroad in the street and may therefore properly be considered by the State Board of Tax Commissioners in ascertaining the value of such special franchise; but in so considering the cost the board is not to treat the pavement as constituting any part of the tangible property of the railroad company, inasmuch as it does not belong to the structure of the railroad and is not necessary for its operation."

In *Pennsylvania Steel Co.* v. *New York City Railway Co.* 191 Fed. 216, a street railway company laid pavement between its tracks as required by statute. The court said the paving material laid "became a part of the street surface of the public highway, and can in no sense be said to continue to belong to the railroad company."

We agree with the principles announced in the above cases. Although the companies pay taxes on the component material while in their possession prior to being incorporated into the paving strips, such material does not retain the character of taxable tangibles when laid in the street. It then becomes an integral part of the pavement and belongs to the city. Upon the termination of the contract, by expiration or any other means, the companies would have no right to remove the paving strips.

Certain other stipulated facts, and several provisions of the ordinances, are urged as showing appellees' ownership of the strips. We do not agree with appellant that they

show the city attempted to surrender its authority over the strips or to vest the title thereto in appellees. Any such attempt or contract would be a nullity and it is unnecessary to set out the stipulations and provisions relied upon. In *People* v. *Chicago City Railway Co.* 324 Ill. 618, we said: "A street railway acquires no interest or estate in the soil by laying its rails on the streets under an ordinance permitting it. * * * The permission given a railway company to use the streets of a city is in subordination to the general power of the municipality over its streets. * * * There is nothing in the ordinance to indicate that the city has surrendered any of its power and authority to control and improve its streets, and if there were it would be void. The power of the city to protect the public in the use of its streets cannot be abrogated by ordinance or reliquished by contract." We reaffirmed that holding in *Chicago Railways Co.* v. *Gill, supra.*

There was no error in sustaining objections to appellant's offered testimony that the strips were beneficial to the track and an important factor in their construction. Such proof could not change the city's title to the strips or tend to show they were tangibles of appellees. The contention that because the companies are entitled to be reimbursed for the expense of the paving strips in case the railways are purchased by the city or its nominees and because that item of expenditure is carried in the capital account, the strips are, therefore, the tangible personal property of the companies, is answered adversely in *Chicago Railways Co.* v. *Gill, supra.* In that case it was sought to collect a tangible personal property tax on the interest of the railway company in certain tunnels under the Chicago river, which the company was obliged to lower at its own expense under requirements of the War Department and ordinances of the city of Chicago. We held that the expense was a proper item of capital account, but the property right of the company was intangible. We there said: "The situation,

as we see it, is no different than if the street railway company had paid the city in cash * * * in return for the privilege of operating its street cars on the streets of the city, thereby obtaining * * * a property right which could have been credited to capital account and properly included in any option to sell which might have been agreed upon with the city. That property right, however, would have been just as intangible as the one discussed by us in the case of *Central Illinois Public Service Co.* v. *Swartz*, 284 Ill. 108."

In *People* v. *Upham*, 221 Ill. 555, relied upon by appellant, private tunnels which were not for any public use were constructed beneath the surface of public streets. The city had no interest in them and the public had no right to enter or pass through them. They were for the exclusive private use and profit of the corporations constructing them. We held that such private property was tangible in form and was so taxable. That case was distinguished and held to be inapplicable in the *Gill case*. Neither has it any application here.

Whether or not appellees had a right to sell certain unusable portions of blocks removed from the strips is not in issue here. Nor has the question of the competency of testimony as to how the capital stock tax return was prepared any effect upon the question before us. The strips of paving in question do not belong to appellees. They are the property of the city of Chicago and the city would have no right to make any contract vesting the title in appellees. Whatever right the railway companies have therein is purely intangible and therefore is not assessable as tangible personal property belonging to them.

The judgment of the circuit court was right and is affirmed.              *Judgment affirmed.*